```
       IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF OKLAHOMA
```

TINA LOWRY,                        )
                                   )
          Plaintiff,               )
                                   )
v.                                 )     Case No. CIV-15-005-JHP-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
          Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Tina Lowry (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 21, 1975 and was 35 years old at the time of the ALJ's latest decision. Claimant completed her education through the ninth grade. Claimant has worked in the past as a housekeeper and rural postal carrier. Claimant alleges an inability to work beginning August 1, 2008 due to limitations resulting from pain in the hips, lumbar spine, and legs.

**Procedural History**

On April 29, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing was held before an Administrative Law Judge ("ALJ"), an unfavorable decision was entered on January 4, 2011. On appeal to this Court, the ALJ's decision was reversed and the case was remanded for further proceedings by Order entered September 23, 2013.

On remand, a second hearing was conducted on May 20, 2014 by ALJ Doug Gabbard, II by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On October 16, 2014, the ALJ again issued an unfavorable decision on Claimant's applications. Claimant did not file exceptions with the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984 416.1484

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light with

4

limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility; (2) reaching an unsupported RFC; (3) failing to properly evaluate the opinion evidence; and (4) failing to adequately develop the record.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post compression fracture of the thoracic spine and multilevel lumbar degenerative disc disease. (Tr. 441). The ALJ also found Claimant retained the RFC to perform light work except that she could only occasionally stoop and must alternate between sitting and standing every 15-20 minutes throughout the workday in order to change positions, but without leaving the workstation. (Tr. 442).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of cashier and furniture rental clerk. (Tr. 453). As a result, the ALJ determined Claimant was not disabled from August 1, 2008 through the date of the decision. (Tr. 454).

Claimant contends the ALJ failed to properly evaluate her credibility. The ALJ cited to relatively objective medical

5

findings, Claimant's conservative treatment, and the extensive nature of her daily activities in finding Claimant's statements not entirely credible or "weakened" credibility. (Tr. 443). The ALJ did not find Claimant's allegations of pain entirely credible in light of the findings in the objective medical testing. Nerve conduction studies were normal (Tr. 257), x-rays, CT scans, and MRI scans showed an old compression fracture, no significant disc bulge except for a tiny central disc bulge or protrusion at L5-S1 which did not significantly indent the subarachnoid space, and mild degenerative change. (Tr. 222, 249, 252, 273, 328-29, 336, 54-55, 690-91).

The ALJ also considered that Claimant only received conservative treatment for her condition. Recommended light activity, epidural injections, hot showers, and heating pads were among the relatively mild treatments prescribed. (Tr. 269, 287, 642, 732, 736, 738).

The ALJ also considered the inconsistency in Claimant's claimed limitations and her daily activities. These activities included taking care of four children, washing dishes and laundry, preparing meals, driving, shopping and managing finances. (Tr. 443).

It is well-established that "findings as to credibility should

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies

between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

**RFC Evaluation**

Claimant next asserts the ALJ's RFC findings are not supported by the evidentiary record. Missing from the briefing is the precise basis for Claimant's assertion. She simply contends that "[t]he evidence in the record would support a more restrictive RFC . . . ."

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record

were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. (Tr. 443-50).

**Consideration of Opinion Evidence**

Claimant also contends the ALJ did not properly evaluate the opinion of her treating physician, Dr. William Willis. Dr. Willis completed an attending physician's statement dated August 30, 2010. He predicted Claimant would have to take unscheduled breaks in an eight hour workday, would need to elevate her feet, and would need a sit/stand option. Dr. Willis found Claimant's pain and symptoms were severe enough to interfere with her attention and concentration and ability to tolerate work stress. He determined Claimant could not use her feet for repetitive movements and could not use her hands for repetitive pushing and pulling. (Tr. 276).

The ALJ found Dr. Willis' opinion was entitled to "little if any weight" because it was inconsistent with the medical record as a whole and his own medical notes. (Tr. 451). The ALJ noted that during an October 12, 2012 appointment, Dr. Willis determined Claimant's pain level was at a three out of ten with medication and

9

that her level of functionality improved significantly with medication. (Tr. 451, 658, 664, 667, 670, 696, 699, 703, 705). The ALJ also found that in an appointment with Dr. Thomas Cheyne, it was noted Claimant could perform light work.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

10

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ fulfilled his obligation to identify specific and legitimate bases for according Dr. Willis' opinion reduced weight. In particular, the internal inconsistency with Dr. Willis' treatment records justifies the assignment of weight to the opinion.

**Duty to Develop the Record**

11

Claimant contends the ALJ did not follow the remand order from this Court in ordering additional consultative examinations or recontacting Dr. Willis. To be clear, this Court did not direct that the ALJ do either of these tasks on remand. Rather, the suggestion was made that "[i]f additional development of the record is deemed necessary in order to ascertain the objective status of Claimant's limitations" then the ALJ should order additional testing or recontact Dr. Willis. The ALJ determined that no such additional development was necessary and he certainly was under no obligation to obtain it if he deemed it unnecessary.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE